Bonnie L. COFFMAN, Petitioner,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Respondent.

No. 93SC411.

Supreme Court of Colorado,
En Banc.

Sept. 19, 1994.

Rehearing Denied Oct. 11, 1994.

Waltz, D'Antuono, Correll & Anderson,
Tim Correll, Denver, for petitioner.

Levy & Lambdin, P.C., Marc R. Levy,
Suzanne Lambdin, Scott P. Landry, Engle-
wood, for respondent.

*OPINION*

Justice KIRSHBAUM delivered the
Opinion of the Court.

In *Coffman v. Coffman*, 865 P.2d 856
(Colo.App.1993), the court of appeals held
that household exclusion clauses in automo-
bile insurance policies remained enforceable
subsequent to our decision in *Meyer v. State
Farm Mutual Automobile Insurance Com-
pany*, 689 P.2d 585 (Colo.1984), wherein we
determined that such clauses were unen-
forceable because they were contrary to the
public policy of this state. The court of
appeals based its decision on the fact that
subsequent to our decision in *Meyer* the Gen-
eral Assembly adopted section 10–4–
418(2)(b), 4A C.R.S. (1994), which statute
provides that such exclusion clauses are com-
patible with the public policy of this state.
Having granted certiorari to review the court
of appeals' conclusion, we reverse and re-
mand with directions.

I

On December 1, 1984, the petitioner, Bon-
nie L. Coffman, and her husband purchased
an automobile insurance policy from State
Farm Mutual Automobile Insurance Compa-
ny (hereafter State Farm) covering their
1979 Pontiac automobile. The policy provid-
ed liability coverage for bodily injury with

limits of $100,000 for each person and $300,000 for each accident from December 1, 1984, to May 29, 1985, renewable at six-month intervals thereafter. Although this court's decision in *Meyer v. State Farm Mutual Automobile Insurance Company*, 689 P.2d 585 (Colo.1984), wherein we concluded that household exclusion clauses were unenforceable, had been announced prior to December 1, 1984, the form on which State Farm issued the Coffman's policy contained such a clause.[1] The Coffmans renewed their policy in May of 1985 for an additional six-month period ending on November 29, 1985.

On March 4, 1985, State Farm submitted proposed endorsement 6896S to the State Insurance Commissioner (hereafter the Commissioner) for filing and approval pursuant to section 10–4–720(1), 4A C.R.S. (1994). The proposed endorsement contained a "household limitation" clause that provided as follows:

THERE IS NO COVERAGE:

2. FOR ANY **BODILY INJURY** TO:

c. ANY **INSURED** OR ANY MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW.

At the time this endorsement was submitted for approval, the minimum liability coverage for bodily injuries to one person was established at $25,000. § 10–4–706(a), 4A C.R.S. (1994). The parties dispute whether the Commissioner approved the proposed endorsement. On June 17, 1985, State Farm amended all its policies issued in Colorado to include endorsement 6896S. With respect to the Coffman's policy, the endorsement purported by its terms to take effect on November 29, 1985, the policy renewal date.

On December 27, 1985, State Farm issued an automobile insurance policy to the Coffmans insuring a 1986 "GMC JIMMY" four-wheel drive vehicle (the insured vehicle).[2] That policy stated that the coverage period

for this vehicle extended from December 27, 1985, to May 29, 1986, and contained the same limits on bodily injury liability coverage as did the December 1984 policy—$100,000 per person up to a maximum of $300,000 per accident. The policy expressly noted on the cover page that endorsement 6896S was incorporated therein. The December 27, 1985, policy was renewed for an additional six-month period in May 1986.

On July 1, 1986, the General Assembly adopted section 10–4–418(2)(b), which section states as follows:

(b) The commissioner shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. Such exclusions are in conformity with the public policy of this state.

§ 10–4–418(2)(b), 4A C.R.S. (1994).

On August 4, 1986, the Coffmans were involved in an automobile accident. The petitioner was driving the insured vehicle at the time. Her husband, a passenger therein, was seriously injured. He later filed this civil action against the petitioner seeking damages in excess of $70,000 allegedly sustained by reason of the petitioner's negligent operation of the vehicle.

Relying on the provisions of endorsement 6896S to the Coffmans' policy, State Farm refused to pay any claims made by Mr. Coffman against the petitioner in excess of the $25,000 limit contained therein. The petitioner filed a third-party complaint against State Farm, asserting that at the time of the accident the policy provided liability coverage of $100,000 with respect to her husband. The petitioner subsequently filed a motion for partial summary judgment against State Farm, arguing that endorsement 6896S was not effective because it had not received the approval of the Commissioner as required by

---

1. Liability coverage was excluded for "ANY **INSURED** OR ANY FAMILY MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD."

2. The parties dispute whether the policy issued on December 27, 1985, constituted a new policy or was a renewal of the policy originally issued in December 1984.

section 10–4–720(1), 4A C.R.S. (1994). State Farm filed a cross-motion for partial summary judgment in which it contended that endorsement 6896S had been approved by the Commissioner. The trial court denied both motions on the basis of its conclusion that genuine issues of material fact existed with respect to whether endorsement 6896S had been approved by the Commissioner.

On November 26, 1991, State Farm filed a motion for reconsideration of the denial of its motion for partial summary judgment. State Farm argued that this court's decisions in *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990), and *Allstate Insurance Company v. Feghali*, 814 P.2d 863 (Colo.1991), "indicate that the Supreme Court decision in *Meyer, supra*, was, in fact, wrong, based upon a mistaken premise, and should not be given any force or effect at all." At that time the case was assigned to a judge other than the judge who had entered the order denying the motions for summary judgment.

On December 27, 1991, the trial court granted State Farm's motion for reconsideration and granted State Farm's motion for partial summary judgment. The trial court made the following pertinent remarks in the course of the ruling:

> The Court finds the issue to be whether there was a reduction of coverage without the insurance commissioner's approval. Pursuant to the holdings in both [*Feghali* and *Schlessinger*], the Court finds that the household exclusion clause in an insurance policy is valid.

> Therefore, State Farm's endorsement 6896S, providing liability coverage of $25,000, is not a reduction but an increase in coverage and does not need the insurance commissioner's approval.[3]

The petitioner appealed this judgment to the court of appeals, arguing, *inter alia*, that section 10–4–418(2)(b) had prospective effect only and did not nullify the effect of the decision in *Meyer* with respect to any automobile insurance policy issued to her during the period between the date of that decision and July 1, 1986, the effective date of that statute. The court of appeals rejected this argument.[4] *Coffman*, 865 P.2d at 858. Citing our decision in *Schlessinger*, a majority of the court explained its conclusion that endorsement 6896S was enforceable against petitioner as follows:

> We reach this conclusion because the issue of the applicable public policy created by the Act was not finally resolved until the General Assembly's enactment [of section 10–4–418(2)(b) ] in 1986. And, were we to conclude otherwise, the directive of the General Assembly on an issue of public policy would be frustrated.

*Coffman*, 865 P.2d at 858. In a special concurrence, one member of the panel indicated agreement with the trial court's reasoning that endorsement 6896S represented increased coverage for the petitioner and therefore required no approval by the Commissioner. *Id.*

## II

### A

In *Meyer v. State Farm Mutual Automobile Insurance Company*, 689 P.2d 585 (Colo. 1984), this court held that pursuant to the Colorado Automobile Accident Reparations Act, sections 10–4–701 to –723, 4 C.R.S. (1973 & 1984 Supp.) (commonly known and hereafter referred to as "the No–Fault Act"), household exclusion clauses in automobile liability insurance policies were invalid. We reached this conclusion on the basis of our

---

**3.** The inconsistency between the rationale of this ruling and that supporting the first judge's conclusion stems from the second judge's acceptance of State Farm's argument that as a result of *Schlessinger* the household exclusion clause contained in the Coffmans' initial December 1, 1984, policy was effective to deny *any* coverage to members of their household. In this view, the provisions of endorsement 6896S authorizing coverage of $25,000 for injuries to members of an insured's household constituted an increase rather than a decrease in coverage and the par-

ties' dispute as to whether endorsement 6896S was approved by the Commissioner is immaterial.

**4.** State Farm also cross-appealed the trial court's initial denial of State Farm's motion for summary judgment. In view of its disposition of the issues raised by the petitioner's appeal, the court of appeals did not reach the issues raised by State Farm's cross-appeal.

examination of the provisions of the No–Fault Act concerning required coverage and permissible exclusions and the Act's declaration of purpose, as set forth in section 10–4–702, 4A C.R.S. (1994).[5] We determined that "the legislative purpose in adopting the Act was twofold: To avoid inadequate compensation to victims of automobile accidents, and to require that motor vehicle owners purchase insurance policies which provide coverage for *both* liability and no-fault benefits." *Meyer*, 689 P.2d at 588 (emphasis in original). Noting that the provisions of section 10–4–706(1)(a), 4A C.R.S. (1994),[6] required insurers to provide minimum levels of liability coverage, we concluded that the language of section 10–4–712, 4A C.R.S. (1987),[7] permitting insurers to incorporate exclusions into automobile liability insurance policies so long as such exclusions were approved by the Commissioner did not authorize the Commissioner to approve exclusions that were inconsistent with the requirements of the Act.[8]

We then held that household exclusion clauses conflicted with the mandatory requirements of the Act and were therefore invalid or void. *Meyer*, 689 P.2d at 589–92.[9]

The policy issued to the petitioner in May 1985 contained a household exclusion clause which was invalid as a matter of law under the rule announced in *Meyer*. Because the household exclusion clause was invalid, it did not in fact limit in any manner the ability of household members to recover benefits under the policy issued to the petitioner. Accordingly, the applicable limit of the policy coverage was $100,000. Contrary to the conclusion of the court of appeals, the addition of endorsement 6896S to the petitioners' policy, effective November 29, 1985, constituted a reduction in the coverage then available to her husband from $100,000 to $25,000.

In May 1986, more than a year and a half after we decided *Meyer*, the General Assembly enacted House Bill No. 1204, ch. 83, sec.

5. This section provides as follows:

   **Legislative declaration.** The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.
   § 10–4–702, 4A C.R.S. (1994).

6. Section 10–4–706(1)(a), 4A C.R.S. (1994), provided in pertinent part as follows:

   **Required coverage.** (1) Subject to the limitations and exclusions authorized by this part 7, the minimum coverages required for compliance with this part 7 are as follows:
   (a) Legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars to any one person in any one accident and thirty thousand dollars to all persons in any one accident, and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of five thousand dollars in any one accident.
   The minimum coverage limits of $15,000, $30,000 and $5,000 in this statute were changed, effective July 1, 1983, to $25,000, $50,000 and $15,000 respectively. Ch. 93, sec. 1, § 10–4–706(1)(a), 1983 Colo.Sess.Laws 456.

7. Section 10–4–712 as it was formulated at the time of the *Meyer* decision provided as follows:

   **Conditions and exclusions.** (1) The coverage described in section 10–4–706 may be subject to conditions and exclusions approved by the commissioner which are not inconsistent with the requirements of this part 7.
   (2) The coverage described in section 10–4–706 may also be subject to exclusions where the injured person:
   (a) Sustains injury caused by his own intentional act; or
   (b) Is operating a motor vehicle as a converter without a good faith belief that he is legally entitled to operate or use such vehicle.
   § 10–4–712, 4A C.R.S. (1987). This provision is identical in relevant part to that currently in effect, except that the current statute omits any express requirement that the Commissioner approve such exclusions.

8. We observed in *Meyer* that the Commissioner had adopted Colorado Insurance Regulation No. 74–20, which approved the inclusion of household exclusion clauses in automobile liability insurance policies, on July 1, 1974. *Meyer*, 689 P.2d at 589.

9. We concluded, therefore, that household exclusions in Colorado were "invalid [because they were] neither authorized by statute nor in harmony with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damages to avoid inadequate compensation to victims of automobile accidents." *Meyer*, 689 P.2d at 590–92.

5, § 10–4–418, 1986 Colo.Sess.Laws 578, 580–81, entitled as follows:

AN ACT CONCERNING THE AUTHORITY OF THE COMMISSIONER OF INSURANCE TO REGULATE INSURANCE PRACTICES, AND PROVIDING FOR THE REGULATION OF ISSUED OR PROPOSED INSURANCE DOCUMENTS AND CLARIFYING THE OBLIGATION OF INSURERS TO MAINTAIN RECORDS REGARDING THE BASES OF THEIR INSURANCE RATES AND UNDERWRITING PRACTICES IN CONNECTION THEREWITH.

House Bill 1204 contained an amendment to section 10–4–418, 4 C.R.S. (1973 & 1986 Supp.), by the addition of subsection (2)(b) thereto, which new subsection contained the following language:

(b) The commissioner shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. Such exclusions are in conformity with the public policy of this state.

§ 10–4–418(2)(b), 4A C.R.S. (1994). House Bill 1204 did not refer to the language or declaration of purpose contained in the No–Fault Act.

Some four years later, in *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990), we had reason to consider the question of whether by adopting the No–Fault Act the General Assembly abolished the parental immunity doctrine in cases where a child sustains injuries as the result of negligent operation of an automobile by the child's parent. In concluding that the No–Fault Act did not abrogate that common law doctrine, we noted that our decision in *Meyer* was not dispositive because the parental immunity doctrine was not involved in the earlier case. *Schlessinger*, 796 P.2d at 1388. We also stated as dicta in *Schlessinger* that by adopting section 10–4–418(2)(b), the General Assembly had "legislatively repealed" the *Meyer* decision.[10] *Schlessinger*, 796 P.2d at 1389.

B

State Farm contends that the General Assembly's enactment of section 10–4–418(2)(b), 4A C.R.S. (1994), and this court's decision in *Schlessinger* compel the conclusion that the holding reached in *Meyer*, that household exclusions in automobile liability insurance policies are invalid, was of no consequence at any time. This contention presents two distinct questions: whether the 1986 legislation was intended by the General Assembly to have retrospective effect and, if not, whether our decision in *Schlessinger* reflects this court's conclusion that, notwithstanding our decision in *Meyer*, the public policy of this state at no time rendered household exclusion clauses contained in automobile liability insurance contracts invalid. We reject these arguments.

1

■ Legislation is presumed to be prospective in effect absent a clear legislative intent to the contrary. *Riley v. People*, 828 P.2d 254, 257 (Colo.1992). *See also People v. Holland*, 708 P.2d 119, 120 (Colo.1985); *People v. Macias*, 631 P.2d 584, 587 (Colo.1981). The Senate sponsor of House Bill 1204, Senator Claire Traylor, explained the purpose and effect of the proposed language now codified at section 10–4–418(2)(b) as follows:

This is the bill that is coming along with the tort and insurance reforms. And this gives the insurance commissioner more control over looking at policy forms, certificates, contracts of insurance or riders, underwriting rules.

. . . .

The second part of the committee amendment is a problem that we have all of a sudden developed in Colorado where a member of the household insures another member of the household. And we have had some really large settlements of that.

10. We recognize that in exercising its legislative power the General Assembly neither repeals nor overrules cases decided by this court. The use of such terms in this or other opinions simply describes the practical effect particular legislation may have on previously decided cases.

What we're going to do is say that, you know, that is not going to be allowed, that under Colorado law a member of a household can claim against another member of the same household and that—and this is very important to the legal, to the case that was, to the cases that have been determined—that such exclusions are in conformity with the public policy of this state. And they have found before that ... that it was not the public policy of this state to say that you couldn't sue against one member of the household against another and I believe that most of us in this body certainly agree [sic] with that so I would ... move the committee amendment.

Without directly referring to *Meyer*, Senator Traylor acknowledged that in the absence of adoption of the proposed language the public policy of Colorado would continue to prohibit the enforcement of blanket household exclusion clauses such as the clause contained in the December 1, 1984, policy issued by State Farm to the petitioner. The enactment of section 10–4–418(2)(b) established a new public policy. Neither the language of this statute nor the legislative history thereof indicates that the General Assembly intended the statute to have retroactive effect. To the contrary, the statutory language and relevant legislative history reflect the General Assembly's recognition that household exclusions were not valid in Colorado prior to the adoption of House Bill 1204 and its intent to alter this legal principle. The new principle of law established by section 10–4–418(2)(b), therefore, was applicable only to automobile liability insurance policies issued on or after July 1, 1986, the effective date of the legislation.

### 2

State Farm relies on certain statements contained in *Schlessinger* in asserting that the household exclusion contained in the petitioner's automobile liability policy must be deemed to have been valid and enforceable. State Farm argues that *Schlessinger* overruled *Meyer* and in effect nullified the rule of law announced therein. We reject this argument.

We reached our conclusion in *Meyer* that household exclusion clauses in automobile liability insurance policies were invalid on the basis of our construction of language of the then extant No–Fault Act. We initially examined the express requirement of compulsory liability coverage in section 10–4–706(1)(a) and the related prohibition in section 10–4–712 of exclusions that might conflict with this requirement. *Meyer*, 689 P.2d at 588–89. We determined that this statutory language compelled the conclusion that household exclusions were inconsistent with the Act. *See People v. District Court*, 713 P.2d 918, 921 (Colo.1986).

We also concluded that the legislative intent expressed in section 10–4–702 was compatible with and reinforced our construction of sections 10–4–706(1)(a) and –712. *Meyer* thus articulated the public policy of Colorado as expressed by the language of the No–Fault Act.

In *Schlessinger*, we did not state that *Meyer* was overruled. We did recognize that in enacting section 10–4–418(2)(b) the General Assembly established that, effective July 1, 1986, the inclusion of household exclusion clauses in automobile liability insurance policies was consistent with the public policy of this state.[11] We did not suggest that section 10–4–418(2)(b) should be given retroactive effect.

Our conclusion in *Schlessinger* that the No–Fault Act did not abrogate the parental immunity doctrine was contrary to the result the court of appeals had reached. In commenting upon the court of appeals' decision, we addressed *Meyer* in some detail because the court of appeals had substantially relied on that opinion in reaching its conclusion. We first observed that *Meyer* was not dispositive of the issue raised in *Schlessinger*. *Schlessinger*, 796 P.2d at 1388. Noting that Meyer resulted in substantial part from our reliance on the distinction of purpose set forth in section 10–4–702, 4A C.R.S. (1987), we pointed out that "the General Assembly legislatively repealed the *Meyer* decision in 1986, by enacting section 10–4–418(2)(b), 4A C.R.S. (1987)...." *Schlessinger*, 796 P.2d at 1389. State Farm relies on this language for

---

11. In *Meyer* then Justice Rovira had suggested    such legislative action. *Meyer*, 689 P.2d at 593.

its assertion that in *Schlessinger* we overruled *Meyer* and held that the rule of law announced in *Meyer* was never applicable.

We reject this argument for several reasons. Initially it is noteworthy that in *Schlessinger* we carefully distinguished *Meyer*. In commenting that the General Assembly in effect repealed the rule of law announced in *Meyer* we simply recognized that the General Assembly may at any time establish a rule of law contrary to a nonconstitutional rule of law previously articulated by this court.

In *Schlessinger* we also commented that this court's interpretation of the No–Fault Act in *Meyer* did not correspond to the purpose intended by the General Assembly. *Schlessinger,* 796 P.2d at 1389. State Farm relies on this statement as support for its argument that the rule announced in *Meyer* was void and of no effect. While this dicta is broad, it does not indicate a conclusion that the General Assembly intended section 10–4–418(2)(b) to have retroactive application. That issue was not raised in *Schlessinger.*

In two cases decided subsequent to *Schlessinger* we had occasion to summarize the holding of that case. In *Allstate Insurance Company v. Feghali,* 814 P.2d 863 (Colo. 1991), we stated that:

> We decided in *Schlessinger* that the holding in *Meyer* that household exclusions violated the policy and purpose of the Act was repealed by the adoption of section 10–4–418(2)(b).... Section 10–4–418(2)(b) legislatively authorized the use of household exclusions in automobile liability policies and household exclusions therefore are consistent with the public policy of the Act.

*Feghali,* 814 P.2d at 866. Similarly, in *Mayo v. National Farmer's Union Property and Casualty Company,* 833 P.2d 54 (Colo.1992), we observed that:

> By adoption of section 10–4–418(2)(b), the General Assembly legislatively repealed the *Meyer* decision. *Schlessinger v. Schlessinger,* 796 P.2d 1385, 1389 (Colo.

1990). Thus, section 10–4–418(2)(b) represents a considered legislative expression validating household exclusion clauses.

*Mayo,* 833 P.2d at 57. These references to *Schlessinger* confirm the fact that in 1986 the General Assembly's enactment of section 10–4–418(2)(b) changed the public policy of the state with respect to the propriety of household exclusion clauses in automobile liability policies.

### III

We have determined that the principle of law announced in *Meyer* was applicable to the automobile liability insurance policy purchased by the Coffmans in December 1984 and to the renewal thereof in May of 1985. Because the household exclusion clause contained in the renewal policy was not valid, the petitioner was entitled to benefits of up to $100,000 per person as provided in the policy with regard to injuries resulting to any person injured as a result of her negligent operation of the covered vehicle. Proposed endorsement 6896S, which purported to limit the liability coverage for injuries to members of the Coffman household to $25,000, thus constituted a reduction in the coverage established by the applicable policy and required the approval of the Commissioner in order to become effective.[12] State Farm and the petitioner dispute whether the Commissioner in fact approved endorsement 6896S. Hence, a genuine material issue of fact exists in this case, rendering the trial court's order granting partial summary judgment to State Farm improper.

### IV

For the foregoing reasons, the judgment of the court of appeals is reversed. The case is remanded to that court for further proceedings consistent with this opinion, including consideration of the issues raised by State Farm's cross-appeal.

---

12. The rule established in *Meyer* prohibited complete exclusion of benefits for household members. *Meyer* expressed no opinion with regard to whether a clause in an automobile liability insurance policy limiting coverage for injuries to household members to the minimum liability coverage statutorily required would be consistent with the provisions of the No–Fault Act. *Meyer,* 689 P.2d at 593 n. 7.

VOLLACK, J., dissents.

ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice VOLLACK dissenting:

The majority holds that the endorsement 6896S included within petitioner's policy reduced the coverage for injuries to household members—from $100,000 to $25,000—and required the approval of the State Insurance Commissioner (Commissioner) in order to become effective. Maj. op. at 278, 281. I disagree with this interpretation.

I believe that the majority errs in construing this case to be one of determining whether the General Assembly intended section 10–4–418(2)(b), 4A C.R.S. (1994), to apply retroactively. In my judgment, it is anomalous to interpret the endorsement as creating reduced uninsured motorist coverage when, under the household exclusion provision, coverage had previously been excluded altogether.

I dissent because I believe that endorsement 6896S imposing a $25,000 limit represents an increase in coverage from the total household exclusion provision. I would therefore affirm the court of appeal's ruling that endorsement 6896S increased the coverage from zero dollars to $25,000 for claims made by one household member against another and was therefore not a "reduction" in coverage requiring the approval of the Commissioner.

## I.

In September 1984, in our decision in *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), we invalidated a household exclusion provision in an automobile insurance policy as violative of the public policy embodied in the Colorado Automobile Reparations Act, §§ 10–4–701 to –723, 4 C.R.S. (1973).

In December 1984, the petitioner, Bonnie L. Coffman (Coffman), and her husband, Gary E. Coffman, (the Coffmans) purchased an automobile insurance policy, No. 270–1782–E29–06, from the respondent, State Farm Mutual Automobile Insurance Co. (State Farm).[1] The policy covered their 1979 Pontiac and was renewable every six months.[2]

The Declarations Page for State Farm Policy Form 9806.2 specifying Coffman's coverage listed Coffman as the "named insured." The Declarations Page also stated that Coffman had a "REPLACED POLICY" between the policy period of December 1, 1984, and May 29, 1985, and stated:

> YOUR POLICY CONSISTS OF THIS PAGE, ANY ENDORSEMENTS, AND THE POLICY BOOKLET, FORM 9806.2[.] PLEASE KEEP TOGETHER.

The policy provided bodily injury coverage limits of $100,000 for each person and $300,000 for each accident. The policy that State Farm issued contained a household exclusion provision which excluded from liability coverage "ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD."

In light of *Meyer*, in March 1985, State Farm submitted proposed endorsement 6896S to the Commissioner for filing and approval pursuant to section 10–4–720(1), 4A C.R.S. (1994).[3] The proposed endorsement extended minimum statutory liability coverage per person for bodily injury to any household member and thus modified the Coffmans' original policy, which provided no coverage to household members.[4]

---

1. Prior to this policy, the Coffmans had an Iowa State Farm auto insurance policy which contained a household exclusion provision identical to the one in their December 1984 policy.

2. The first policy contained an agreement for renewal which provided in part:

   Unless within 59 days of the policy effective date, we mail or deliver a notice of cancellation to **you**, we agree:
   . . . .

b. to renew the policy for the next policy period at the rates then in effect unless we mail to **you** written notice of our intention not to renew. The notice will be mailed to **your** last known address at least 30 days before the end of the current policy period.

3. The parties dispute whether the Commissioner approved the proposed endorsement.

4. Section 10–4–706(1)(a), 4 C.R.S. (1973), mandates compulsory liability coverage and sets forth

In June 1985, State Farm amended all its policies issued in Colorado to include endorsement 6896S. According to the affidavit of State Farm's underwriting supervisor, the endorsement, along with their renewal policy, was mailed to the Coffmans on October 25, 1985. Under the Coffmans' policy, the endorsement, pursuant to its term, became effective on November 29, 1985, the policy renewal date.

In December 1985, the Coffmans renewed their automobile insurance policy from State Farm and insured a 1986 "GMC JIMMY" four-wheel drive vehicle (the insured vehicle).[5] This policy, No. 270–1782–E29–06A, stated that the coverage period for this vehicle extended from December 27, 1985, to May 29, 1986, and contained the same limits on bodily injury liability coverage and terms of family exclusion as the December 1984 policy. The endorsement, entitled "6896S AMENDMENT OF LIABILITY COVERAGE," was identified on the Declarations Page and attached as an amendment to the renewal policy. The endorsement described the basic coverage as follows:

THERE IS NO COVERAGE:

2. FOR ANY *BODILY INJURY* TO:

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESID-ING IN THE *INSURED'S* HOUSEHOLD TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW.

Additional endorsements were also attached. The Coffmans renewed this policy in May 1986, for an additional six-month period.

On July 1, 1986, the legislature enacted section 10–4–418(2)(b), 4A C.R.S. (1994),[6] which contains a legislative declaration that household exclusions are not contrary to the public policy of this state. Section 10–4–418(2)(b) provides as follows:

The commissioner [of insurance] shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title [10, Insurance,] on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. Such exclusions are in conformity with the public policy of this state.

In August 1986, the petitioner, operating the insured vehicle, was involved in an automobile accident in which her husband was a passenger and was seriously injured. On the date of the accident, the May 1986 renewal

---

the minimum coverage for automobile liability insurance as follows:

Legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars to any one person in any one accident and thirty thousand dollars to all persons in any one accident, and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of five thousand dollars in any one accident[.]

The minimum coverage limits were changed to $25,000, $50,000 and $15,000, respectively, effective July 1, 1983. Act approved May 23, 1983, ch. 93, sec. 1, 1983 Colo.Sess.Laws 456; § 10–4–705(1)(1), 4A C.R.S. (1994). The minimum liability coverage for bodily injuries to the petitioner's husband at the time the endorsement became effective and at the date of the accident was therefore $25,000.

5. The parties dispute whether the policy issued on December 27, 1985, constituted a new policy or was a renewal of the policy originally issued in December 1984.

Contrary to the petitioner's assertion, the evidence overwhelmingly indicates that the petitioner renewed her automobile liability policy on several occasions. The case law additionally establishes that policies issued to petitioner subsequent to the issuance of her original policy were renewals of the original rather than new policies. For example, in *Government Employees Insurance Co. v. United States*, 400 F.2d 172 (1968), the Tenth Circuit held that a liability insurer's transmittal of a cover letter, with a renewal policy which contained an additional endorsement excluding the United States as an omnibus insured, advising the insured to carefully read the policy as submitted, coupled with the fact that the additional endorsement was attached separately thereto, was sufficient to call the insured's attention to the change in coverage, and the modification was properly incorporated into the renewed policy.

6. Act approved May 30, 1986, ch. 83, sec. 5, 1986 Colo.Sess.Laws 581.

policy was in effect.[7] The petitioner's husband initiated a civil action against the petitioner for his personal injuries, seeking damages for loss of income, permanent disability, pain and suffering, and present and future disability with loss or diminution of earning power. Pursuant to endorsement 6896S in the Coffmans' policy, State Farm paid the petitioner's husband the $25,000 liability limit. The $25,000 liability limit reflected the amount awarded to a household member for bodily injuries under section 10–4–706(1)(a), 4A C.R.S. (1994).

The petitioner thereafter filed a third-party complaint against State Farm, seeking a determination that endorsement 6896S was ineffective for lack of approval by the Commissioner, and a declaration that at the time of the accident the policy provided liability coverage at $100,000 per person for bodily injury. The petitioner subsequently filed a motion of partial summary judgment against State Farm on the ground that the endorsement limiting coverage to $25,000 for household members constituted the type of reduction in coverage that requires approval by the Commissioner as required by section 10–4–720, 4A C.R.S. (1994). State Farm filed a cross-motion for summary judgment, seeking a determination that the effective policy limit was $25,000 as provided by endorsement 6896S.

The trial court denied both motions and ruled:

Whether or not the coverage of the renewal policy is different from the coverage provided in the first policy [issued in December 1984] is the central factual issue in this case.... Ms. Coffman would have the court rule that Endorsement 6896S is ineffectual for failure to obtain approval required by CRS 10–4–720. Ms. Coffman has presented a great deal of factual material in support of this argument. On the other hand, State Farm seeks a ruling that the endorsement was approved and therefore summary judgment should be entered in its favor. State Farm's motion is also supported by fact affidavits.

The only thing which the cross motions and supporting materials make certain is that there are genuine issues of material facts which go to the central disputes in this case. Therefore, the cross motions for summary judgment are each denied.

State Farm filed a motion for reconsideration of the denial of its motion for partial summary judgment, claiming that this court's decisions in *Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990), and *Allstate Insurance Co. v. Feghali,* 814 P.2d 863 (Colo.1991), "indicate that the Supreme Court decision in *Meyer* ... was, in fact, wrong, based upon a mistaken premise, and should not be given any force or effect at all."

On December 27, 1991, a different judge than the judge who had entered the initial order denying the motions for summary judgment issued a second order granting summary judgment in favor of State Farm. Relying upon *Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990), and *Allstate Insurance Co. v. Feghali,* 814 P.2d 863 (Colo. 1991), the trial court concluded that the household exclusion clause in the insurance policy was not void and that, therefore, the endorsement, providing liability coverage of $25,000, is not a decrease in coverage requiring approval by the Commissioner.

The petitioner thereafter appealed this ruling to the court of appeals, arguing that the endorsement was invalid since section 10–4–418(2)(b) had prospective effect only and did not nullify *Meyer's* impact on coverage under the automobile insurance policy issued to the petitioner after the *Meyer* decision was rendered and before July 1, 1986, the effective date of section 10–4–418(2)(b). The court of appeals considered this argument to lack merit. A majority of the court of appeals concluded that the trial court, on reconsideration, had correctly found that the "household exclusion was not void and that, therefore, the endorsement issued by State Farm was not a decrease in coverage requiring approval by the insurance commissioner." *Coffman,* 865 P.2d at 858. After reviewing the history of the legislature's declaration and this court's subsequent decisions in *Schlessinger* and *Feghali,* the majority concluded that the endorsement imposing the

---

7. Section 10–4–418(2)(b), 4A C.R.S. (1994), was     also in effect prior to the date of the accident.

$25,000 limit was enforceable against the petitioner.

In a special concurrence, Judge Briggs wrote:

State Farm issued a policy to Coffman that excluded any bodily injury liability coverage for household members. After the decision of our supreme court in *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), State Farm issued an endorsement to the policy which provided liability coverage for household members to $25,000 per person. The policy was renewed with this endorsement on more than one occasion.

Section 10–4–720(1) C.R.S. (1987 Repl. Vol. 4A) requires approval by the State Insurance Commissioner for a *reduction* in coverage. In my view, the endorsement changing the policy from no coverage to $25,000, even if necessitated by the *Meyer* decision, is not a "reduction" in coverage under § 10–4–720(1) which requires the commissioner's approval. For this reason, I would affirm the decision of the trial court finding the endorsement valid.

*Id.* at 858–59.

## II.

I disagree with the majority's conclusion that endorsement 6896S included within petitioner's policy reduced the coverage for injuries to household members—from $100,000 to $25,000—and required the approval of the Commissioner in order to become effective. Maj. op. at 278, 281. The effect of the majority opinion violates both the spirit and intent of creating the endorsement to the household exclusion provision.

In my judgment, it would be anomalous to interpret the endorsement as creating reduced uninsured motorist coverage when, under the household exclusion provision, coverage had previously been excluded altogether. Accordingly, I believe that endorsement 6896S, extending statutory liability per person to $25,000, represents an increase in coverage from the total household exclusion provision.[8]

Further, under the facts of this case, I do not perceive the situation presented here to be a retroactive question. In my judgment, we need not reach the question whether the General Assembly intended section 10–4–418(2)(b) to have retroactive application.

State Farm claims that, because Coffman's insurance policy contained a "household exclusion", endorsement 6896S did not reduce Coffman's coverage, but in fact, increased it from $0 to $25,000. I agree.

In March 1985, State Farm submitted proposed endorsement 6896S to the Commissioner for filing and approval pursuant to section 10–4–720(1), 4A C.R.S. (1994). The proposed endorsement extended $25,000 per person liability coverage for bodily injury to any household member, pursuant to section 10–4–706(1)(a), 4A C.R.S. (1994). In June 1985, State Farm amended all its policies issued in Colorado to include endorsement 6896S. According to the affidavit of State Farm's underwriting supervisor, the endorsement, along with their renewal policy, was mailed to the Coffmans on October 25, 1985. The endorsement, entitled "6896S AMENDMENT OF LIABILITY COVERAGE," was identified on the Declarations Page and attached as an amendment to the renewal policy. The endorsement described the basic coverage as follows:

THERE IS NO COVERAGE:

2. FOR ANY *BODILY INJURY* TO:

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW.

Additional endorsements were also attached. Under the Coffmans' policy, the endorsement, pursuant to its term, became effective on November 29, 1985, the policy renewal date.

---

8. Based upon my interpretation of the issue to be resolved, I conclude that endorsement 6896S does not require approval under § 10–4–720, 4A C.R.S. (1994), thus rendering summary judgment appropriate.

The petitioner, having been placed on statutory notice of the endorsement, renewed her policy several times during the course of two years without objecting to the terms of the policy or requesting a modification of the endorsement. Had the petitioner wanted greater coverage than the minimum specified in the endorsement, she could have requested an increase in coverage.

Insurance policies are contracts, and the intent of the parties must be ascertained from the plain language of the policy where there is a written instrument. *Federal Deposit Ins. Corp. v. American Casualty Co. of Reading, Pa.*, 843 P.2d 1285, 1289–90 (Colo. 1992); *May v. United States*, 756 P.2d 362, 369 (Colo.1988). In construing a policy provision which clearly and unambiguously details coverage, the language should be construed according to the plain meaning of the words, and strained constructions should be avoided. *American Casualty Co. of Reading, Pa.*, 843 P.2d at 1290; *Wota v. Blue Cross and Blue Shield*, 831 P.2d 1307, 1309 (Colo.1992).

When the endorsement is considered as a whole, the language of the provision specifies the limits of liability coverage to a household member for bodily injury.

Additionally, pursuant to section 10–4–720, 4A C.R.S. (1994), approval by the Commissioner is required only if the endorsement or policy provision reduces coverage as part of a "general reduction in coverage approved by the commissioner or to satisfy the requirements of other sections of this part 7." An increase in coverage, however, does not require the approval of the Commissioner. Because I do not consider endorsement 6896S to reduce coverage, as prior to this endorsement the policy had a general household exclusion, section 10–4–720 is not applicable.

A majority of jurisdictions hold household exclusions invalid only as to the amount of the minimum liability coverage required by the compulsory insurance law. Where the policy limit exceeds the statutory minimum, the insurer's liability is limited to the coverage required by statute. *Stepho v. Allstate Ins. Co.*, 259 Ga. 475, 383 S.E.2d 887 (1989); *Dewitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981); *State Farm Mut. Auto. Ins. Co. v.*

*Nationwide Mut. Ins. Co.*, 307 Md. 631, 516 A.2d 586 (1986); *State Farm Mut. Auto. Ins. Co. v. Shelly*, 394 Mich. 448, 231 N.W.2d 641 (1975); *Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881 (S.D.1992); *State Farm Mut. Auto. Ins. Co. v. Mastbaum*, 748 P.2d 1042 (Utah 1987); *Allstate Ins. Co. v. Wyoming Ins. Dep't*, 672 P.2d 810 (Wyo.1983).

In light of the above, I would therefore affirm the court of appeals' ruling that State Farm's endorsement 6896S increased the coverage from zero dollars to $25,000 for claims made by one household member against another and was therefore not a "reduction" in coverage requiring the approval of the Commissioner.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.