36 Mich. App. 513 (1971)
194 N.W.2d 193
WEISBERG
v.
DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE
Docket No. 8237.
Michigan Court of Appeals.
Decided October 26, 1971.
*516 Sugar, Schwartz, Silver, Schwartz & Tyler (by William Gage), for plaintiff.
Rouse, Selby, Dickinson, Shaw & Pike (by William H. Morman), for defendant Detroit Automobile Inter-Insurance Exchange.
Frank J. Kelley, Attorney General, Robert A. Derengoski, Solicitor General, Joseph B. Bilitzke, Assistant Attorney General, and Alan Walt, Special Assistant Attorney General, for the Secretary of State.
Before: LEVIN, P.J., and BRONSON and O'HARA,[*] JJ.
O'HARA, J.
Morrey Weisberg,[1] in his lifetime, was the owner of an automobile insured with defendant insurance company. He was a passenger in his own automobile which was being permissibly operated by one Bunney LaCourt. She drove it into a utility pole. As a result he sustained injuries.
At the time of the collision, Morrey had a policy of insurance including both public liability and "uninsured motorists" coverage. He filed a claim with the company under both. The company denied both. He also asserted a claim against the Motor Vehicle Accident Claims Fund claiming that if denial of the *517 coverage by the Exchange was valid, then he had redress against the fund because Miss LaCourt was, in that event, an uninsured motorist. The claim was rejected by the Secretary of State, as director of the fund. The action on his policy and against the fund were consolidated and formed the basis for his suit for a declaratory judgment. The trial court denied his motion for a summary judgment and entered judgment for the company and the fund, relieving them from liability. He appeals of right.
We consider first his claim under his liability coverage. It was denied by the Exchange because of "Exclusion (a)" which provided that the policy did not apply "to bodily injury to any named insured or bodily injury or property damage caused intentionally by or at the direction of the insured".
He argued that the operation of the quoted Exclusion (a) violated the public policy expressed by the Motor Vehicle Accident Claims Act, MCLA § 257.1101 et seq. (Stat Ann 1968 Rev § 9.2801 et seq.) and § 3010 of the Insurance Code, MCLA § 500.3010 (Stat Ann 1971 Cum Supp § 24.13010). Moreover, he argued that the language of the exclusion drafted by the defendant insurance company was ambiguous and should be construed against it.
The language contained in Exclusion (a) is clear and unambiguous. Liability coverage does not, by its terms, extend to injuries to the named insured. Morrey was a named insured. See Cottrill v. Michigan Hospital Service (1960), 359 Mich 472. The exclusion is inherent in the concept of liability insurance. It contemplates protection of the insured against liability running from the insured to another. See Detroit Automobile Inter-Insurance Exchange v. Bishop (1970), 24 Mich App 90. The claim of ambiguity and need for construction is without merit.
*518 Nor do we find any merit in plaintiff's claim that this exclusion is contrary to the public policy expressed in the two statutes cited. Both are concerned with the protection of the rights and claims of third parties when the vehicle owner becomes liable to those third parties. The ruling of the trial court that the defendant insurance company is not liable to plaintiff under the liability policy was proper.
Next, plaintiff argues that if he were not protected under the liability insurance clause of the policy, then Miss LaCourt was an uninsured motorist; hence, the provision providing for recovery for injury caused by an uninsured automobile obtained. The company, in its denial of this claim, relied upon the definition found in "Definition (d) (1)", of its uninsured motorists coverage, which provides:
"`uninsured automobile' means (1) a motor vehicle with respect to the ownership, maintenance or use of which there is, with respect to Part (1), no bodily injury liability insurance policy or bond, or, with respect to Part (2), no property damage liability insurance policy or bond, applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, and;"
and upon "Definition (e) (1)" which provides:
"an uninsured automobile shall not include (1) a motor vehicle owned by the insured or any resident of the same household."
Courts can rarely expect to find language more clear in its meaning and application. Uninsured motorists coverage extends only to injuries sustained by plaintiff from an "uninsured automobile". An uninsured automobile, for the purpose of the policy, *519 does not include a motor vehicle owned by the insured. Morrey owned the offending vehicle. Plaintiff, clearly, may not recover under the uninsured motorists coverage of his policy, because of the terms of his contract.
Plaintiff argues that such result is anomalous. Anomalous, or not, the fact that plaintiff is not covered under the liability clause of his policy and, at the same time, may not recover under his uninsured motorists coverage does not empower us to rewrite the contract.
There is available insurance, covering his own car, which plaintiff's decedent elected not to purchase. Parties have the right to contract as to the terms of an insurance policy and so long as the terms do not contravene statutory requirements of public policy, the courts will enforce an insurance contract as it would any other contract. Burch v. Wargo (1966), 378 Mich 200; Eghotz v. Creech (1962), 365 Mich 527.
Finally, plaintiff argued that if he is unable to recover from his insurance company under either theory, then he should be permitted to recover from the Fund under MCLA § 257.1106 (Stat Ann 1971 Cum Supp § 9.2806), which provides for recovery for personal injury to any person which is occasioned in this state by an uninsured motor vehicle.
The Motor Vehicle Accident Claims Act, MCLA § 257.1102 (d) (Stat Ann 1968 Rev § 9.2802[d], defines uninsured motor vehicles as follows:
"`Uninsured motor vehicle' means a motor vehicle as to which there is not in force a liability policy meeting the requirements of the motor vehicle responsibility law of this state * * * and which is not owned by a holder of self-insurance under the law."
*520 It is clear, as the trial court found, that the liability insurance policy issued by the defendant insurance company was a liability policy as contemplated by this subsection. Plaintiff's automobile was therefore not an uninsured motor vehicle within the meaning of the Motor Vehicle Accident Claims Act.
It is plaintiff's claim that inasmuch as he is barred from recovery under the terms of the liability policy then it cannot be said that the policy was "in force". There was a liability insurance policy. The policy was in force. This much is undeniable. It was not, however, in force as to this plaintiff. The question therefore becomes, "Does the fact that an exclusion bars this plaintiff's recovery vitiate the policy for the purpose of compliance with the Motor Vehicle Accident Claims Act?"
Logically, the answer must be found in the object of the statute. Constitutionally, its object must be expressed by its title (Const 1963, art 4, § 24). We examine it.
"An Act providing for the establishment * * * of a motor vehicle accident claims fund for the payment of damages * * * to * * * certain persons * * * in certain cases." (Emphasis supplied.)
This is a far cry from a legislative action creating a fund for the payment of damages to all persons in all cases resulting from any injury not otherwise compensable or collectible. If such were the legislative object, that object could have been very easily legislatively expressed. To reason from the premise that since there is an injured claimant who cannot recover against the offending owner or operator of a motor vehicle the fund must of necessity be liable, is impermissible. To do so, requires us to make an assumption that is not suggested to us in the statute, let alone expressly stated.
*521 We do not read the Motor Vehicle Accident Claims Act as creating a substitute for personal accident insurance, making injury and damage compensable merely by reason of the happening of an accident, the damage from which is otherwise uncollectible or uncompensable.
Plaintiff's able counsel argues with vigor and persuasively that we should reach the contrary conclusion. We think to do so we would have to legislate judicially in violation of the constitutional separation of governmental powers.
If the Legislature had desired to provide access to the fund for any plaintiff who, for any reason, found himself unable to recover from an insurance company, we believe that it could have done so by specific statutory language. The Legislature has limited recovery to a specific class of plaintiffs, clearly defined by statute, and not including the plaintiff herein. Control over membership in the class of parties entitled to recovery being vested in a coordinate branch of government, we are not at liberty to revise and modify these definitions under the guise of "interpretation".
We are urged by the Attorney General to extend our holding to deny recovery to the owner of an uninsured automobile injured while a passenger therein on that ground itself. Because this case is of first impression, because of the importance of the holding in future cases, and because of the possibility of further review by the Supreme Court, we will commit ourselves decisionally.
As noted by the Attorney General in his brief:
"It is important to keep in mind that plaintiff seeks to recover against the fund for personal injuries sustained when a passenger in his own automobile, negligently being driven by another with his full knowledge, consent and authorization."
*522 Analysis of § 6 of the act imparts to us that the Legislature never intended to authorize a monetary recovery by an owner of an uninsured motor vehicle for damages caused by that same vehicle, since under § 6(5) the secretary is required  in every case  to suspend the license and registration of such owner until the monies received from the fund are repaid or arrangements therefor are made. It is a logical contradiction that a claimant could first receive payment from the fund and then have his license and registration suspended until he repays the fund.
The interpretation which would allow an injured owner-occupant to recover against a fund of the same nature as ours has been passed upon in other jurisdictions.
The courts of our "friendly neighbor to the north" (which, in Detroit, is to the south)[2] have considered the question at least to the extent of property damage.
"The problem is whether recovery can be had from the unsatisfied judgment fund where the property damaged is the very motor vehicle which it is alleged occasioned the damage.
"In my opinion, the meaning to be attached to the word `property' in the section of the Highway Traffic Act in question is not broad enough to include the motor vehicle which it is alleged occasioned the damage, and therefore the application will be dismissed with costs." Smith v. Padfield (1950), OWN 371, aff'd (1950), OWN 482, 3 DLR 512.
In Re Donaldson v. Arno (1959), OWN 363, the Ontario High Court of Justice again considered the question of the right of an owner of a vehicle to recover from the Ontario fund for damage to his own vehicle and rejected it.
*523 It is but a short step from this judicial interpretation by the jurisdiction from which we, in large part, adopted our act, to the conclusion that the same reasoning applies in the case of one claiming against our fund for damages resulting from personal injury sustained by him while a passenger in his own vehicle driven by one who has the owner's consent to do so.
We here hold that recovery under these circumstances is repugnant to and inconsistent with the clear legislative intent as expressed in our statute. The owner-passenger may not recover from the fund.
For the reasons herein discussed and stated, the declaratory judgment entered by the trial court is affirmed. No costs, a public question.
ADDENDUM
Since the submission of this case, a decision by another panel of this Court has been released which deals with the same general issue. Our holding here, however, should be carefully distinguished from that case: Allstate Insurance Company v. Motor State Insurance Company (1971), 33 Mich App 469.
In Allstate the insured was the registered co-owner of the alleged offending vehicle, but his operator's license had previously been suspended. To register the vehicle, the insured was required to furnish proof of financial responsibility. The policy issued contained this proviso:
"When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law such insurance as is afforded for bodily injury or property damage liability by this policy shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law."
*524 In the instant case the foregoing proviso does not apply.
BRONSON, J., concurred in opinion and addendum.
LEVIN, P.J. (dissenting).
Morrey Weisberg, claiming that he was injured by the negligence of the driver of an automobile in which he was riding as a passenger, commenced this action for a declaratory judgment concerning the liability for the damages he suffered of the defendant insurer, Detroit Automobile Inter-Insurance Exchange, and of the defendant Secretary of State, as director of the Motor Vehicle Accident Claims Fund.
Weisberg owned the automobile and he was the named insured in an automobile insurance policy issued by the defendant insurer covering the automobile for public liability. The policy not only protects Weisberg as to his liability to other persons arising out of the ownership or use of the automobile, it also provides like protection to any person "using" the automobile with Weisberg's permission. The person driving the automobile when Weisberg was injured was driving it with his permission.
But the policy provides that such liability coverage does not apply to injury to any named insured and that the uninsured motorist coverage of the policy does not apply to a motor vehicle owned by an insured.
The plaintiff, administrator of Weisberg's estate (see footnote 1 of majority opinion), contends that the exclusion in the policy of liability to a named insured is invalid with the result that the insurer is required to respond for the legal obligation of the driver to Weisberg arising out of the driver's negligent driving.
*525 The driver was not otherwise insured. The plaintiff further contends that if the exclusion in the policy is valid, then the automobile was uninsured, with the result that the Motor Vehicle Accident Claims Fund is liable, and the insurer is also liable under the uninsured motorist coverage because the exclusion in respect to that coverage is also invalid.
The insurer denies liability claiming that the exclusions are valid; the fund denies liability on the ground that the vehicle was insured.
I.
If the challenged public liability exclusion is valid, then the driver who was driving Weisberg's automobile was not insured, under the policy issued in respect to that automobile, for the liability imposed on her by law for personal injury caused Weisberg.
The Motor Vehicle Accident Claims Act[1] provides that an "uninsured motor vehicle" is "a motor vehicle as to which there is not in force a liability policy meeting the requirements of the motor vehicle responsibility law of this state". The motor vehicle responsibility law provides that an owner's policy of liability insurance "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles".[2] (Emphasis supplied.)
Under that definition a vehicle is uninsured for the purpose of the accident claims act unless both the owner and any driver using it with the owner's permission *526 are insured against the liability imposed on them by law arising out of negligent driving of the vehicle. The statute does not say that the insurer is authorized to except from the required coverage protection of a driver against the legal liability imposed on him by law on account of personal injuries he causes the owner by his negligent driving.
Since the policy issued to Weisberg did not, by reason of the challenged exclusion, insure drivers of his automobile against loss from the liability imposed on them by law for personal injury caused Weisberg arising out of the negligent use of his automobile, the policy issued to Weisberg did not in terms provide the coverage required by the financial responsibility law.
It follows that if the policy exclusion for personal injury caused the owner is valid, Weisberg's vehicle was, under the definition in the accident claims act, adopting the requirements of the financial responsibility law, an uninsured vehicle.
II.
The shorthand term "uninsured motor vehicle" can be misleading. To begin with, motor vehicles are not insured for public liability. Owners and drivers of motor vehicles purchase insurance to cover their liability, not the vehicle's liability. Actions to recover for personal injury arising out of the ownership or use of a motor vehicle are brought against the owner or driver or both, not in rem against the vehicle. More importantly, the accident claims act's definition of an uninsured motor vehicle controls; that definition explicitly provides that a vehicle is uninsured unless the accident claims fund is protected by insurance from exposure to an injured person arising out of the nonpayment of a *527 judgment obtained against an uninsured driver even though the owner is insured for his responsibility under the civil liability act.[3]
Without a requirement that the insurance cover the driver as well as the owner, in any case where the insurance covers only the owner and the damages assessed against the owner and the driver exceed the amount recoverable from the owner, the injured person could proceed against the fund if the driver did not pay the excess. By requiring that the owner's insurance cover the driver as well as the owner the Legislature sought to reduce claims against the accident claims fund arising out of unpaid claims against drivers. Cf. Woods v. Progressive Mutual Insurance Company (1968), 15 Mich App 335; Collins v. Motorists Mutual Insurance Company (1971), 36 Mich App 424, LEVIN, P.J., concurring.
The reasoning and holding of our Court in Bennett v. Pitts (1971), 31 Mich App 530, 534, establishes that whether an automobile is an insured motor vehicle or an uninsured motor vehicle does not depend solely on whether an insurance policy has or has not been written covering the vehicle as a named or specifically identifiable vehicle. In that case we ruled that an automobile is an insured vehicle even though the owner of the automobile does not have insurance where the driver has insurance covering him while driving the automobile. We said that the accident claims fund was not subject to liability in that case because the fund is only liable "when there is no liability insurance policy in force with respect to that vehicle. [The driver's] insurance policy was in force `with respect to that vehicle'. Ergo, it was not uninsured. Ergo, the fund cannot be liable." (Emphasis by the Court.) The converse of that *528 syllogism is also correct: There was no insurance "in force" covering the legal liability of a driver of Weisberg's automobile for personal injury caused Weisberg. Ergo, the vehicle was not insured. Ergo, the fund would be liable.
III.
Weisberg's vehicle was licensed as an insured vehicle without payment of the uninsured motor vehicle fee on the insurer's certification that the policy "complied" with the requirements of the accident claims act.
Recently in Allstate Insurance Company v. Motor State Insurance Company (1971), 33 Mich App 469, a panel of our Court held invalid an exception to the public liability coverage in an automobile liability policy for accidents caused while the vehicle is being operated by an "excluded driver".
We said in Allstate that, while the exclusion would have been valid before the enactment of the accident claims act, it was clear from the provisions of that act that "the Legislature intended that no automobile should be registered in this state unless certain requirements have been met. To obtain registration for an automobile one must either have a policy of liability insurance or pay the uninsured motor vehicle fee." (Emphasis supplied.) We further said that an exclusionary clause not authorized by the accident claims act was violative of the public policy expressed by the Legislature in that act.[4]
*529 Similarly, the exclusionary clause in the liability policy now before us is invalid. Here, as in Allstate,
(1) the owner of the vehicle did not pay the uninsured motor vehicle fee; he had purchased a policy of liability insurance,
(2) the insurance company certified that the policy he had purchased complied with the requirements of the accident claims act; on the basis of that certification the state licensed the vehicle without payment of the uninsured motor vehicle fee, and
(3) the policy issued contained an exclusion not authorized by the statute.
One of the exclusions expressly permitted by the financial responsibility law is of "liability for damage to property owned by, rented to, in charge of, or transported by the insured".[5] (Emphasis supplied.) This express authorization of an exclusion for damage to the insured's property and the failure to authorize an exclusion for personal injury caused an insured further supports the view that no distinction may properly be drawn in the required personal injury insurance coverage based on whether the insured or someone else is injured or on whether the injury was caused by a driver using one vehicle or another.
To distinguish the exclusion before us from the exclusion in the Allstate case on the ground that the exclusion in the present case precludes the owner of the vehicle  the purchaser of the policy  rather than a third party does not comport with the legislative purpose of protecting persons injured by uninsured vehicles. An owner suffers just the some as a third party when injured. As a practical matter, an *530 owner is as likely to need such protection as a third party; in this very case the uninsured motorist protection which Weisberg purchased, like the liability coverage, does not in terms provide coverage in this situation.
The legislation which we construe is designed to protect the citizens of this state without regard to whether they might through the exercise of diligence and expenditure of funds otherwise protect themselves. The Legislature apparently concluded that the social problem of uncollected judgments against uninsured motorists requires such a paternalistic policy. There is no sound reason for supposing that the Legislature concluded that this comprehensive public policy should stop short of protecting an owner who is injured by a driver of the owner's vehicle.
I am satisfied that the Legislature intended that all Michigan residents, except those entitled to workmen's compensation benefits (§ 29 of the act),[6] who are injured in this state by an uninsured vehicle  which under the statutory definition includes situations where the driver is uninsured  would be able to recover from the accident claims fund.[7] To *531 give effect to this insurance policy exclusion, which makes a driver of Weisberg's automobile uninsured for personal injuries caused Weisberg, would be to enlarge the exposure of the accident claims fund. I would, therefore, hold that this insurance policy exclusion is inconsistent with the breadth of the coverage provided in the accident claims act and the legislative expectation that the fund should have no exposure in respect to an insured vehicle.[8]
It is manifestly the intention of the Legislature, as our Court concluded in Allstate, to bar insurance companies from representing that automobile policies which they write comply with the requirements of the accident claims act  so that vehicles can be licensed as insured vehicles without payment of the $45 uninsured motor vehicle fee  and later claiming, when liability is asserted under a policy, that the vehicle is not insured by reason of an exclusion.
Now that our Court has declared § 29 of the act unconstitutional (Bowser v. Jacobs [1971], 36 Mich App 320), and, therefore, even those persons entitled to workmen's compensation benefits can recover from the accident claims fund, the result reached in this case leaves matters in this posture: all residents *532 of Michigan injured in this state by uninsured vehicles excepting only an owner of a vehicle who is injured by the negligent driving of the driver of his own vehicle may recover up to $10,000 either under a liability policy insuring against the negligence of the driver, or, if there is no insurance, from the accident claims fund. This narrow preclusion of an owner injured under those circumstances is not required by the language of the act; it is opposed to the language and the policy of the act and common sense.
I would hold that the exclusion in the liability portion of the policy is invalid to the extent of the statutorily-required policy limits, $10,000/$20,000/$5,000, and that the vehicle is, therefore, an insured vehicle with the consequences that the insurer has no liability under the uninsured motorist portion of the policy and that the accident claims fund has no liability to the plaintiff.
NOTES
[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.
[1] Sometime subsequent to collision, Morrey Weisberg died from an unrelated cause. The administrator of his estate succeeded him as plaintiff. For purposes of clarity, we will refer to the original plaintiff as Morrey. The fact of the substitution of parties is immaterial.
[2] A geographical fact difficult of comprehension for one who came originally from the Upper Peninsula.
[1] MCLA § 257.1102(d) (Stat Ann 1968 Rev § 9.2802[d]).
[2] MCLA § 257.520(b) (Stat Ann 1968 Rev § 9.2220[b]).
[3] MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101).
[4] "The public policy as delineated by the Legislature requires that the liability policy must be written in conformity with the statutory requirements. The statute does not provide for the type of exclusionary clauses as were contained in the instant policy. Thus, the exclusionary clauses are contrary to the public policy of this State and are therefore invalid and of no effect." Allstate Insurance Company v. Motor State Insurance Co. (1971), 33 Mich App 469, 473, 474.
[5] MCLA § 257.520(e) (Stat Ann 1968 Rev § 9.2220[e]).
[6] See MCLA § 257.1129 (Stat Ann 1968 Rev § 9.2829).
[7] My colleagues argue that the Secretary would have had the right under the accident claims act to recover back from Weisberg any amount paid to him by the fund and, therefore, he had no right of recovery against the fund. They refer to MCLA § 257.1106(5) (Stat Ann 1968 Rev § 9.2806[5]) which requires the Secretary of State to suspend the registration and operator's license "of the persons to whom the notice was forwarded under this section" until the fund is reimbursed, or the commencement of installment repayments in accordance with an agreement with the Secretary or proof of financial responsibility is filed. Under subparagraph (1) of that section any person who has a cause of action "against the owner or driver of the uninsured motor vehicle" (emphasis supplied) may make claim against the fund and under subparagraph (2) of that section notice of the claim is required to be forwarded to "the owner and driver of the uninsured motor vehicle against whom liability for damages is alleged". Clearly Weisberg, as owner of the vehicle, did not have any liability under the civil liability act to Weisberg, the person injured by the negligent driving of the driver  Weisberg could not have sued Weisberg. Thus, Weisberg was not an "owner * * * against whom liability for damages is alleged". (Emphasis supplied.) Accordingly, no notice could have been sent to him under subparagraph (2) and he would not have had any obligation of reimbursement under subparagraph (5).

Similarly, MCLA § 257.1110 (Stat Ann 1968 Rev § 9.2810) provides for the suspension of the license or registration of "the judgment debtor on whose behalf the payment [by the fund] is made". Clearly Weisberg could not be a judgment debtor in an action commenced by him against the driver. The provisions of MCLA § 257.1120 (Stat Ann 1968 Rev § 9.2820) concern actions against the Secretary directly where the identity of the uninsured driver is unknown (MCLA § 257.1113 et seq. [Stat Ann 1968 Rev § 9.2813 et seq.]); that is not this case.
[8] Cf. Woods v. Progressive Mutual Insurance Company (1968), 15 Mich App 335; Collins v. Motorists Mutual Insurance Company (1971), 36 Mich App 424, LEVIN, P.J., concurring.