**FARMERS INSURANCE EXCHANGE, Petitioner,**

v.

**Trent M. DOTSON, Respondent.**

No. 95SC122.

Supreme Court of Colorado, En Banc.

March 18, 1996.

Levy & Lambdin, P.C., Marc R. Levy, Linda A. Battalora, Englewood, for Petitioner.

Michael R. Bromley, P.C., Michael R. Bromley, Colorado Springs, for Respondent.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Amicus Curiae Colorado Trial Lawyers.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals opinion in *Dotson v. Estate of Pearson,* 903 P.2d 19 (Colo.App.1994), holding that a named insured exclusion[1] in an automobile liability insurance contract is contrary to the public policy of the Colorado Auto Accident Reparations Act, sections 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.), and therefore, void. We affirm the judgment of the court of appeals.

I.

We derive the following facts from the parties' summary judgment motions before the trial court.

Rhonda Dotson and Robert Pearson purchased an automobile insurance policy from Farmers Insurance Exchange (Farmers), the petitioner in this action. The policy listed both Rhonda Dotson and Robert Pearson as

---

1. In general, a named insured exclusion in an insurance policy excludes liability coverage for bodily injury to an individual who is a named insured under the policy when such injury is caused by another insured under the policy.

named insureds [2] and had an effective date of May 15, 1991 and an expiration date of June 9, 1991. The policy insured an automobile registered to and owned by Rhonda Dotson.

On June 8, 1991, Pearson was driving the insured vehicle. At the time, Rhonda Dotson was riding as a passenger in the car. For unknown reasons, Pearson lost control of the vehicle and crashed into a guard rail. Both Pearson and Rhonda Dotson were killed.

Trent Dotson, Rhonda Dotson's husband, brought suit against Robert Pearson's estate to recover for the wrongful death of his wife. On summary judgment, the trial court found Pearson liable for Rhonda Dotson's death under a theory of *res ipsa loquitur*. Ultimately, the trial court entered a judgment against Pearson's estate in the amount of $300,000: $50,000 represented the solatium amount pursuant to section 13–21–203.5, 6A C.R.S. (1993 Supp.), and $250,000 represented economic damages.

Trent Dotson filed a writ of garnishment against Farmers to collect under Pearson's automobile liability policy based on his judgment against Pearson's estate. The Farmers' policy provided that Farmers would pay **"damages** for which any **insured person** is legally liable because of **bodily injury** to any person ... arising out of the ownership, maintenance or use of a **private passenger car**...." Farmers filed an answer disclaiming any responsibility for Pearson's debt and Dotson filed a traverse.

Farmers then filed a motion for summary judgment claiming that the terms of the insurance policy precluded Rhonda Dotson from collecting benefits as a result of the negligence of Pearson. The policy excluded from coverage: "liability for bodily injury to an insured person." The policy defined the term "insured person" as a named insured or any family member of a named insured. Under this exclusion, Rhonda Dotson, as a named insured under the insurance policy, was precluded from recovering damages for which another individual insured under the contract was liable. Since Trent Dotson's claims against Pearson were derivative of his wife's claims and his wife was excluded from coverage, Farmers denied responsibility for Dotson's judgment against Pearson's estate.

Dotson filed a response to Farmers' motion for summary judgment and a cross motion for summary judgment. Dotson argued that the insurance policy's exclusion from liability coverage for insured persons was void as against public policy. Dotson further claimed that our decision in *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984), invalidated such exclusions as void under the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.) (No–Fault Act). Therefore, Rhonda Dotson's claims were not precluded and Dotson was entitled to recover from Farmers under the insurance policy.

The trial court granted summary judgment for Farmers, on the grounds that Rhonda Dotson was a named insured and was not entitled to recover liability benefits under the policy. Because Trent Dotson's claims were derivative of Rhonda Dotson's, Trent Dotson was also precluded from recovery.

Trent Dotson appealed the trial court's ruling to the court of appeals. Relying on our decision in *Meyer,* the court of appeals reversed the trial court's entry of summary judgment for Farmers. *Dotson v. Estate of Pearson,* 903 P.2d 19 (Colo.App.1994). The court of appeals in a two to one decision interpreted *Meyer* as holding that named insured exclusions like the one in the Farmers' policy are contrary to the No–Fault Act and therefore void as against public policy. *Id.* at 20. The court of appeals further held that the General Assembly's enactment of section 10–4–418(2)(b), 4A C.R.S. (1994), permitting household exclusions in insurance contracts did not change the public policy of the state. Rather, the statute created a narrow exception for certain household exclusions to the general public policy of the No–Fault Act disfavoring exclusions from coverage. *Id.* at 21. Disagreeing with the majority's interpretation of *Meyer,* Judge Plank dissented. *Id.*

Farmers petitioned this court for certiorari to determine:

---

**2.** A named insured is usually the primary benefi- ciary under the insurance policy.

Whether an exclusion from liability coverage for bodily injury caused to any named insured ("named insured exclusion") is consistent with the public policy underlying the Colorado Auto Accident Reparations Act, sections 10–4–701 to –725, 4A C.R.S. (1994).

We hold that named insured exclusions are contrary to the public policy of this state as reflected in the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.). We therefore affirm the court of appeals' reversal of the trial court's summary judgment for Farmers and return this case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

## II.

The Farmers insurance policy at issue in this case states that "liability coverage does not apply to liability for bodily injury to an insured person." The policy defines an insured person as either a named insured or a member of the named insured's family. Because Rhonda Dotson was a named insured under the insurance policy, this exclusion precludes her and all those whose rights are derivative of hers from recovering damages based on the liability of an insured under the policy. The question we must resolve is whether this exclusion violates the public policy of this state as expressed in the No–Fault Act.[3]

## A.

Farmers argues that the named insured exclusion in the insurance policy does not violate public policy. Farmers further argues that our decision in *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), is not dispositive of this case. We disagree.

In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *Matter of Estate of Daigle*, 634 P.2d 71, 79 (Colo.1981). However, even if a policy provision is unambiguous, a provision may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Aetna Casualty & Sur. Co. v. McMichael*, 906 P.2d 92, 100 (Colo.1995). Thus, this court has refused to enforce provisions in automobile insurance policies that are against public policy. *See, e.g., Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989)(subrogation clause and release trust agreement unenforceable because would result in inability to obtain full compensation for loss and would violate public policy).

The public policy of the No–Fault Act is expressed in the legislative declaration included in the Act. *See* 10–4–702, 4A C.R.S. (1994). This declaration states:

**Legislative declaration.** The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

It is clear from this declaration that by enacting the No–Fault Act the legislature intended to "avoid inadequate compensation to victims of automobile accidents, and to require that motor vehicle owners purchase insurance policies which provide coverage for *both* liability and no-fault benefits." *Meyer*, 689 P.2d at 588 (emphasis in original).

In *Meyer*, we considered whether household exclusions in automobile insurance policies violated the public policy of the No–Fault Act. *Meyer* involved three consolidated cases. In two of the cases, the injured individuals were attempting to recover benefits under liability coverage provided to a member of the same household. 689 P.2d at 587–

---

**3.** There is a factual dispute between the parties as to whether Rhonda Dotson was a member of Robert Pearson's household. Farmers does not argue here and did not argue below that Rhonda Dotson was excluded from coverage as a member of Robert Pearson's household. Thus, we do not consider such an exclusion in this opinion.

88. In a third case, the *Adcock* case, the plaintiff was injured while riding as a passenger in a car she owned and insured. *Id.* at 588. The driver of the car was a permissive user of the car and thus, an insured under the terms of plaintiff's insurance policy. The driver was not a member of the plaintiff's household. *Id.* In all three cases, the trial court dismissed the injured parties' claims because of liability exclusions in the respective insurance policy. The exclusion clause relied upon by State Farm Mutual Auto Insurance Company in the *Adcock* case is typical. It stated that liability coverage did not apply to " 'any insured or any member of the family of an insured residing in the same household as an insured.' " *Id.*

In the *Meyer* group of cases, we granted certiorari to determine: "Whether the insured or a member of the insured's household may recover under the insured's liability coverage, notwithstanding the existence of a clause in the policy which purports to exclude such coverage." *Id.* We referred to these exclusions collectively as the "household exclusion." Despite the use of the term "household exclusion," *Meyer* in fact considered both whether an insurance policy may exclude insureds from recovering liability benefits under their own insurance contract and whether members of an insured's household may be similarly precluded.

After considering the public policy underlying the No–Fault Act, we held the "household exclusion," including the "named insured" exclusion at issue in *Adcock*, to be void as against public policy.[4] *Id.* at 592. We stated: "The exclusion is neither authorized by statute nor in harmony with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damages to avoid inadequate compensation to victims of automobile accidents." [5] *Id.* Thus, in *Meyer*, as is clear from the foregoing discussion, we invalidated named insured exclusions along with general household exclusions as against public policy and void.

### B.

Farmers argues that even if our holding in *Meyer* invalidated the named insured exclusion present in their insurance policy, the legislature's enactment of section 10–4–418(2)(b), 4A C.R.S. (1994), revived and legalized such exclusions. Farmers further argues that the enactment of section 10–4–418(2)(b) *changed the public policy of the* No–Fault Act, thus, allowing certain limited exclusions in addition to the household exclusion.

To determine whether section 10–4–418(2)(b) permits insurers to include named insured exclusions in their automobile

---

4. In *Meyer,* we defined the term "household exclusion" as follows:

> Generally, the household exclusion operates to relieve an insurance carrier from making payments for loss from bodily injury or death under the terms of a liability policy where *the named insured or any family or household member is injured* in a motor vehicle accident caused by the negligent operation of the vehicle by the insured or a member of his/her family or household.

*Meyer*, 689 P.2d at 587 n. 1 (emphasis added and citations omitted). It is clear from this definition that we used the term "household exclusion" to apply to two distinct situations. The first is where an injured individual is precluded from coverage because that individual is a member of the same household as the insured under the policy. This is referred to as a household exclusion throughout the remainder of this opinion. The second is where an individual is precluded from coverage because the individual is either an insured or a named insured under the policy. This is referred to as a named insured exclusion

throughout this opinion. We considered the validity of both in *Meyer.*

5. The named insured exclusion precludes an insured from collecting liability damages from an individual insured under the same insurance policy. We addressed this general exclusion when we resolved the *Adcock* case in the *Meyer* decision. In *Adcock*, the named insured was attempting to recover for injuries caused by a permissive user of the named insured's car. Under the insurance policy at issue, a permissive user was an insured under the policy. In the present case, the named insured is attempting to recover for injuries caused by another named insured under the policy. Like the *Adcock* case, the tortfeasor is insured under the same policy as the victim. In *Adcock* the tortfeasor was insured as a permissive user of the car while in the present case the tortfeasor is a named insured under the policy. However, because in both cases the tortfeasor is insured under the same policy as the victim, we do not find the distinction to be of significance.

liability insurance contracts, we are guided by long established rules of statutory construction. When interpreting statutes we must give full effect to the intent of the legislature. *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312, 1318 (Colo.1994). To do so, courts interpret statutory terms in accordance with their plain and ordinary meaning. *Bertrand v. Board of County Comm'rs*, 872 P.2d 223, 228 (Colo.1994); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994); *see* § 2–4–101, 1B C.R.S. (1980). When the language of a statute is clear, there is no need to employ interpretive rules of statutory construction. *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1054 (Colo.1995).

■ The legislature enacted section 10–4–418(2)(b) in 1986. *See* ch. 83, sec. 5, § 10–4–418(2)(b), 1986 Colo. Sess. Laws 578, 580. It states:

> The commissioner shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it *excludes coverage of claims made by a member of a household against another member of the same household.* Such exclusions are in conformity with the public policy of this state.

(Emphasis added.)

The plain meaning of section 10–4–418(2)(b) is that insurers may exclude household members from claiming liability benefits under an insurance policy issued to another household member in an automobile insurance policy. The statute makes no mention of whether a general insured may similarly be excluded from coverage for claims made by another insured. The legislature specifically used the more limited phrase "member of a household" rather than the more generic term "insured" for purposes of delineating who may be excluded from coverage. Because the statute on its face only validates household exclusion clauses and not named insured exclusion clauses there is no need to make further inquiry into the legislative intent of the act.

We further find no support in the language of section 10–4–418(2)(b) for Farmers' contention that the General Assembly intended to change the public policy of the state and allow exclusions from coverage in addition to the household exclusion. The legislature must be presumed to have acted with full knowledge of relevant judicial precedent. *Heiserman*, 898 P.2d at 1054. In *Meyer*, we held that excluding household members or insureds from liability coverage was contrary to the public policy of the Act. 689 P.2d at 592. If the General Assembly had intended to broaden the class of valid exclusions beyond household members, it would have explicitly said so. In contrast, the General Assembly expressly limited the scope of section 10–4–418(2)(b) and made no pronouncements regarding a broad sea change in the public policy of the No–Fault Act. We therefore decline to infer one.

## C.

Relying on *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990), and *Mayo v. National Farmers Union*, 833 P.2d 54 (Colo. 1992), Farmers further argues that this court has interpreted section 10–4–418(2)(b) as repealing our decision in *Meyer*. In making this argument, Farmers concedes that our decision in *Meyer* had the effect of invalidating both the household exclusion clause and the named insured exclusion clause. Since we have concluded that the legislature did not revive the named insured exclusion, we must next determine whether *Meyer* has been otherwise overruled.

Although in *Schlessinger* and *Mayo* we did state that section 10–4–418(2)(b) repealed our decision in *Meyer*, we never held as Farmers implies that *Meyer* was rendered void by the enactment of section 10–4–418(2)(b). Furthermore, a close reading of *Schlessinger* and *Mayo* does not support Farmers' contention that section 10–4–418(2)(b) revived the validity of the named insured exclusion.

In *Schlessinger*, we considered whether the No–Fault Act rendered the parental immunity doctrine inapplicable to a child's claim against a parent for injuries sustained in an automobile accident. 796 P.2d 1385. Because the court of appeals relied on *Meyer* in holding the parental immunity doctrine void, we discussed our decision in *Meyer*. After

doing so, we held that *Meyer* was not dispositive of the case because it did not involve the parental immunity doctrine. *Id.* at 1388.

We next considered whether the parental immunity doctrine violated the public policy of the No–Fault Act. In doing so, we stated that we considered it significant that "the General Assembly legislatively repealed the *Meyer* decision in 1986, by enacting section 10–4–418(2)(b), 4A C.R.S (1987)." *Id.* at 1389. We further stated:

In our view, the General Assembly's enactment of section 10–4–418(2)(b) is a clear signal that this court's interpretation of the legislative declaration of purpose in the Auto Accident Reparations Act did not correspond to the purpose actually intended by the General Assembly.

*Id.* Because we found the reasons justifying the parental immunity doctrine to be similar to those justifying the household exclusion, we found no indication that the General Assembly intended to repeal the parental immunity doctrine. *Id.* Thus, although we indicated that section 10–4–418(2)(b) altered the public policy of the No–Fault Act, we made no determination as to whether named insured exclusions were proper under the act.[6]

In *Mayo*, an insurance company brought a declaratory judgment action seeking a determination that the automobile insurance policy provided no coverage for a wife's claims against her husband. 833 P.2d at 56. The policy excluded coverage for the wife as both the named insured and as a spouse of a named insured living in the same household. *Id.* Relying on *Schlessinger*, we indicated that section 10–4–418(2)(b) repealed our decision in *Meyer*. *Id.* at 57. Although in *Mayo*, the wife was precluded from coverage because of both a named insured exclusion and a household exclusion clause, the parties elected to treat the matter as presenting the

sole issue of the validity of a household exclusion clause. *Id.* at 56 n. 2. We specifically stated that we would limit our inquiry to the household exclusion and "not the more detailed classifications contained in the policy." *Id.*

From this discussion it is clear that since our decision in *Meyer* we have not considered whether a named insured exclusion in an insurance policy violates the public policy of the No–Fault Act. Our statements in *Schlessinger* and *Mayo* that the legislature repealed *Meyer* by enacting section 10–4–418(2)(b) were limited to the validity of a household exclusion clause in situations where one family member attempts to collect damages from another family member who lives in the same household. *See also Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 866 (Colo.1991) (holding *Schlessinger* is dispositive of plaintiffs' claims that household exclusion clause violates policy and purpose of the act). These cases did not relate to and have no bearing on the named insured exclusion.

Our decision in *Coffman v. State Farm Mutual Auto. Ins. Co.*, 884 P.2d 275 (Colo. 1994), further supports our conclusion that the rationale of *Meyer* as it pertains to the named insured exclusion is still viable law. In *Coffman*, State Farm argued that in *Schlessinger* we overruled *Meyer* and in effect nullified the rule of law announced therein such that at no time were household exclusions invalid. *Coffman*, 884 P.2d at 280. Thus, State Farm claimed that a policy issued after *Meyer* but prior to the enactment of section 10–4–418(2)(b) could have a valid household exclusion clause. We rejected both these contentions. We first noted that in using the word "repeal," we simply recognized that: "[T]he General Assembly may at any time establish a rule of law contrary to a nonconstitutional rule of law previously artic-

---

6. The parental immunity doctrine prohibits a child from suing a parent for simple negligence. *Schlessinger*, 796 P.2d at 1387–88. The rationale for this doctrine includes the preservation of family harmony, the maintenance of legitimate parental authority and control, and the safeguarding of family assets. *Id.* at 1389. These reasons are similar to those justifying the household exclusion such as the avoidance of possible disruption of the family, the avoidance of possi-

ble collusive suits among family members, and the containment of insurance costs. *Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 866–67 (Colo.1991). Because of this similarity, to the extent we discussed the household exclusion in *Schlessinger* we were referring to the exclusion that precludes household members from pursuing benefits based on the liability of another household member and not the named insured exclusion.

ulated by this court." [7] *Coffman*, 884 P.2d at 281. We further held that although the enactment of section 10–4–418(2)(b) changed the public policy of the state with respect to household exclusions, *Meyer* was not rendered void. *Id.* Thus, a policy issued prior to the enactment of section 10–4–418(2)(b) could not have had a valid household exclusion.

After our decision in *Coffman*, it is clear that the General Assembly's enactment of section 10–4–418(2)(b) did not make our decision in *Meyer* void. Rather, section 10–4–418(2)(b) merely created a narrow exception to the holding in *Meyer*. Our holding that named insured exclusions are void as against the public policy of the No–Fault Act is still in effect.

### III.

In conclusion, we hold that our decision in *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), invalidated named insured exclusions in automobile insurance policies as contrary to the public policy of the No–Fault Act. Neither the General Assembly's enactment of section 10–4–418(2)(b), 4A C.R.S. (1994), nor subsequent case law has changed the public policy of the No–Fault Act with respect to named insured exclusions. Thus, named insured exclusions remain invalid.

 In this case, Trent Dotson as the personal representative of Rhonda Dotson is eligible to collect damages under the Farmers' policy. Because the named insured exclusion in the policy is invalid, Rhonda Dotson's status as a named insured does not preclude her or derivatively, Trent Dotson, from recovery. Therefore, we affirm the decision of the court of appeals and return the case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents, and ERICKSON, J., joins in the dissent.

**7.** We note that in exercising its legislative power the General Assembly neither repeals nor overrules cases decided by this court. The use of such terms in this or other opinions merely rec-

Chief Justice VOLLACK dissenting:

The majority, relying on our opinion in *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), holds that it is contrary to public policy to apply a named insured exclusion clause in an insurance policy to preclude a named insured from recovering under the liability provisions of the policy from another named insured on the same policy. Because *Meyer* did not address the fact scenario presently before us, and thus does not apply to the instant case, I dissent. I would hold that the named insured exclusion, when applied to exclude co-insureds from collecting against each other, is not contrary to public policy.

### I.

Farmers Insurance Exchange (Farmers) issued an insurance policy (the policy) to Rhonda Dotson and Robert Pearson with an effective date of May 15, 1991, and an expiration date of June 9, 1991. Both Dotson and Pearson are listed as "named insureds" in the policy. The insured vehicle was owned by and registered to Dotson.

On June 8, 1991, Pearson was driving the vehicle and Dotson was riding as a passenger when the vehicle collided with a guard rail, killing both Dotson and Pearson. The respondent, Dotson's husband, brought an action against Pearson's estate to recover for the wrongful death of Dotson. The trial court entered summary judgment against Pearson in the amount of $300,000.

The respondent then filed a writ of garnishment against Farmers to collect his judgment from Pearson's estate pursuant to the Farmers policy. Farmers filed an answer denying liability under the policy. Farmers then filed a motion for summary judgment denying coverage under the policy, claiming that because the terms of the policy excluded "liability for bodily injury to an insured person," Farmers could not be required to pay out benefits to Dotson as the result of Pearson's negligence.

ognizes the practical effect that particular legislation may have. *See Coffman*, 884 P.2d at 279 n. 10.

The trial court granted summary judgment in favor of Farmers, holding that because the respondent's wife was a "named insured" under the policy, and because the policy excludes coverage for named insureds, there were no material facts remaining to be decided. The court of appeals reversed the trial court's order, holding that the "named insured" exclusion was invalidated by this court's holding in *Meyer.*

## II.

The majority holds that our decision in *Meyer* stands for the proposition that public policy precludes a named insured exclusion clause in an insurance policy from applying to preclude a named insured from recovering under the liability provisions of the policy from another named insured on the same policy. The majority misconstrues our holding in *Meyer,* and thus improperly broadens the scope of that opinion. Before discussing *Meyer,* however, a brief exposition on the "named insured" exclusion and another related insurance policy exclusion is necessary in order to engage in a principled analysis of *Meyer* and other cases addressing these exclusions.

Commentators and the case law have identified two related, but analytically distinct, exclusions that are commonly found in insurance policies. These are the "named insured exclusion" (or "insured exclusion") and the "household exclusion." [1]

The "named insured" or "insured" exclusion precludes an individual who is designated as an insured in the policy from recovering for his own injuries. John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4409, at 315 (1979). Courts have upheld such exclusions on the grounds that liability coverage is concerned with the protection of the rights and claims of third persons when the named insured became liable to such third persons, and it is thus not contrary to public policy for a liability policy to exclude coverage for bodily injury to a named insured. *See, e.g., Weisberg v. Detroit Auto. Inter–Ins. Exch.,* 36 Mich.App. 513, 194 N.W.2d 193 (1971).

The named insured exclusion has been applied in at least two different types of situations. The more common of these is when a named insured is injured while riding as a passenger in the insured vehicle. In this situation, the insurance policy is in effect because the driver is operating the vehicle with the permission of the insured and is thus covered by the omnibus provision of the policy.[2] The named insured exclusion then operates to preclude recovery by the named insured from the permissive driver. In such a situation, therefore, the party upon whom the liability would be imposed—the permissive driver—is not a named insured under the policy.

The second situation, which is the one before us in the instant case, occurs when two individuals are co-insureds under a single policy. In such a case, the named insured exclusion precludes either co-insured from recovering against the other. Thus, if an accident occurs when one co-insured is driving, and the other is a passenger, the passenger co-insured may not recover from the driver co-insured. In such a situation, the party upon whom the liability would be imposed—the co-insured driver—is a named insured under the policy.

The other related exclusion clause commonly found in insurance policies is the "household exclusion" clause. The standard household exclusion clause states: "This policy does not apply under coverage A, to any obligation ... for bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." Irvin E. Schermer, *Automobile Liability Insurance,* § 24.06[1], at 24–11 (3d ed.

1. We recognized the distinction between these clauses in *Mayo v. National Farmers Union,* 833 P.2d 54, 56 n. 2 (Colo.1992), where we noted, with regard to a named insured clause that excluded coverage for bodily injury to "any insured person," that "the named insured exclusion applicable to [the petitioner] is not strictly a household exclusion clause."

2. An omnibus clause provides coverage for those persons using the insured vehicle with the permission of the named insured. Irvin E. Schermer, *Automobile Liability Insurance,* § 22.02[3], at 22–18 (3d ed. 1995).

1995). The commonly stated purpose for the household exclusion is that the exclusion "protects the insurer from fraudulent or collusive lawsuits between members of the same family." *Meyer*, 689 P.2d at 591.

### III.

In *Meyer*, we considered "whether a 'household exclusion clause' in an automobile liability insurance policy is invalid because it violates the Colorado Automobile Reparations Act [ (the "Act") ], . . . and is therefore contrary to public policy as reflected in the Act." *Id.* at 587. *Meyer* addressed three consolidated cases, each involving different combinations and applications of the above described exclusion clauses.

In the first case (*Meyer*), Kenneth Meyer was driving a vehicle in which his mother was the passenger when the vehicle was involved in an accident, injuring Meyer's mother. Meyer and his mother lived in the same household. Meyer's mother then sued Meyer to recover damages for her personal injuries. Meyer's insurance carrier, State Farm Mutual Insurance Company (State Farm), filed suit seeking a declaratory judgment that Meyer's mother was not entitled to recover additional damages under Meyer's liability policy, based on a clause in Meyer's insurance policy that stated that bodily injury coverage did not apply to "any insured or any member of the family of an insured residing in the same household as the insured." *Id.* The trial court entered summary judgment, holding that the above clause precluded the claim against Meyer, and the court of appeals affirmed.

In the second case (*Aguirre*), Clara Aguirre was a passenger in a car driven by her husband, Porfirio Aguirre, when they were involved in a one-car collision in which Clara suffered bodily injuries. Clara sued Porfirio to recover damages. The vehicle was insured by Farmers Insurance Exchange (Farmers) under a policy listing both Clara and Porfirio as named insureds. The policy contained a clause excluding coverage for "liability of any insured for bodily injury to (a) any member of the same household of such insured except a servant, or (b) the named insured." *Id.* at 588. Pursuant to Farmers' complaint for declaratory judgment, the trial court held that the exclusion clause was valid and that Farmers was thus not obligated to provide a defense for Porfirio or pay any judgment rendered against him.

In the third case (*Adcock*), Marianne Adcock was a passenger in a vehicle owned by her and driven by John DeCrescentis with Adcock's permission. The vehicle was involved in an accident and Adcock filed a negligence action against DeCrescentis. Adcock was insured by State Farm Mutual Automobile Insurance Company (State Farm) under a policy that provided that the liability insurance contained therein did not apply to "any insured or any member of the family of an insured residing in the same household as the insured." *Id.* The policy also contained an omnibus clause stating that the term "insured" included anyone using the vehicle with the permission of the named insured. Adcock and DeCrescentis filed a complaint for declaratory judgment, contending that State Farm was obligated to provide a defense for DeCrescentis or pay any judgment rendered against him, and the trial court dismissed the complaint.

We considered these cases together, and stated:

> We hold that the *household exclusion* is invalid because it is contrary to the provisions of the [Colorado Automobile Reparations Act] and thereby violates public policy as expressed in the Act.

*Id.* at 588 (emphasis added). We based this holding upon what we perceived to be the public policy underlying the Act as expressed in the Act's legislative declaration which states:

> **Legislative declaration.** The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

§ 10–4–702, 4A C.R.S. (1994). We then examined the Act in more detail and ascertained that liability insurance is mandatory under the Act. We further determined that the household exclusion was not sanctioned by any of the provisions pertaining to permissible exclusions in the Act.

We then discussed the commonly asserted rationale for the household exclusion: that it protects the insurer from fraudulent or collusive lawsuits between members of the same family.[3] After examining relevant case law, we dismissed this rationale, stating that "we agree with those courts that have noted that such a possibility does not justify the barring of non-collusive claims." *Meyer,* 689 P.2d at 591.

Finally, we held that

> the *household exclusion* is invalid. The exclusion is neither authorized by statute nor in harmony with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damage to avoid inadequate compensation to victims of automobile accidents.

*Id.* at 592 (emphasis added).

The three factual scenarios in *Meyer* are illustrative of the various ways in which the named insured exception and the household exclusion can be combined and applied. A comparative analysis of *Meyer,* however, demonstrates that the factual scenario in the instant case was never addressed in *Meyer. Meyer* is thus inapposite to the case at bar.

*Meyer* clearly invalidated household exclusions in the *Meyer* and *Aguirre* scenarios.[4] *Meyer* 's treatment of the named insured exclusion in *Adcock* is less clear, as the court in *Meyer* spoke only of invalidating the household exclusion, and no such exclusion was at issue in the *Adcock* case. Instead, *Adcock* involved a named insured exclusion being applied so as to prevent a named insured, riding in a vehicle as a passenger, from recovering from a permissive driver whose negligence caused the named insured injury and damages. *Adcock* is thus factually distinguishable from the instant case.

As I read *Meyer* 's treatment of the *Adcock* facts, this court, despite the unfortunate misuse of the "household exclusion" language, invalidated the application of the named insured exclusion when used to preclude a named insured, riding as a passenger, from *recovering from a permissive driver* whose negligence causes the named insured injury and damages. This differs from the application of the named insured clause in the instant case. Here, the named insured clause is being applied to preclude one named insured, riding as a passenger, from *recovering from another named insured* whose negligence causes the named insured passenger injury and damages. *Meyer* did not speak to such a situation, and did not invalidate this application of the named insured clause.[5] *Meyer* therefore does not ap-

---

3. Notably, we did not discuss in *Meyer* the separate rationale usually offered to support the named insured exclusion, which is that liability coverage is concerned with the protection of the rights and claims of third persons when the named insured becomes liable to such third persons, and it is thus not contrary to public policy for a liability policy to exclude coverage for bodily injury to a named insured. *See, e.g., Weisberg v. Detroit Auto. Inter–Ins. Exch.,* 36 Mich.App. 513, 194 N.W.2d 193 (1971).

4. The court of appeals noted that the *Aguirre* case involved both a household exclusion and a named insured exclusion. *Dotson v. Pearson,* 903 P.2d 19, 20 (Colo.App.1994). The court of appeals thus concluded that *Meyer* invalidated both the household exclusion and the named insured exclusion. *Id.* at 21. This conclusion is unsupported by the procedural posture of the holding in *Meyer.* In *Meyer,* we reversed the trial court's judgment in favor of Farmers on the

grounds that the household exclusion was invalid as against public policy. *Meyer,* 689 P.2d at 592. We then remanded the case to the trial court for further proceedings consistent with the holding in *Meyer: that the household exclusion was invalid.* At no point did we hold that the named insured exclusion was invalid, and on remand in the *Aguirre* case, nothing in *Meyer* would have precluded the trial court from holding that the named insured exclusion in the insurance policy precluded Clara Aguirre from recovering a judgment against Porfirio Aguirre from Farmers.

5. While *Meyer* generally invalidated household exclusion clauses, that case made no such sweeping pronouncements with regard to named insured exclusion clauses. Therefore, it follows that *Meyer* did not generally invalidate named insured exclusion clauses, but only invalidated named insured exclusion clauses when applied to preclude a named insured from recovering from a permissive driver.

ply to the instant case. I would hold that the application of the named insured clause in the case before us is supported by public policy, and I would thus reverse the court of appeals.

IV.

In May 1986, the Colorado General Assembly amended section 10–4–418 with the following language:

The commissioner shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. Such exclusions are in conformity with the public policy of this state.

§ 10–4–418(2)(b), 4A C.R.S. (1994).

The public policy considerations underlying this amendment counsel upholding the exclusion in the instant case. We interpreted the above amendment in *Allstate Insurance Company v. Feghali*, 814 P.2d 863 (Colo.1991), and held that section 10–4–418(2)(b) legislatively authorized household exclusions in insurance policies and thus evinced a legislative intent that household exclusions are consistent with public policy. *Id.* at 866.

In *Feghali*, we identified three justifications for the legislative approval of the household exclusion. These policy considerations are: (1) The prevention of collusive suits; (2) the prevention of an increase in the cost of liability insurance that might result in an increase in the number of uninsured drivers; and (3) avoiding disruption of the family unit by litigation. *Id.* at 866. Each of the factors identified in *Feghali* equally justifies permitting a clause precluding co-insureds from bringing suits against each other.

The potential for collusion between co-insureds is just as great as that between family or household members. The relationship between those who jointly purchase an insurance policy is just as likely to give rise to

collusion as is the relationship between family members and those living in the same household. The potential for collusion derives from the underlying relationship between the parties, not the fact that they happen to live under the same roof or be related by blood or marriage.

Similarly, the concern for containment of insurance costs applies equally in the context of co-insureds. If the exclusion in the instant case is invalidated, insurance premiums will likely rise as a result of this expansion of coverage.

Finally, the interest in avoiding disruption of the family unit by litigation may arise in the context of co-insureds, just as it may within a household. For example, a father could include his son on an insurance policy even though the father and son live in different households. By excluding household members under the policy, but not excluding co-insureds, intra-family litigation might occur that otherwise could be precluded.

The foregoing analysis indicates that it is the relationship between the parties, and not their status as household or family members, that is relevant in determining whether an insurance policy exclusion is invalid as against public policy. The fact that two individuals are both named insureds on the same policy is just as probative of a relationship where public policy sanctions exclusion as the fact that those individuals live in the same house or are related by blood or marriage.

Because *Meyer* does not apply to the facts of this case, and because considerations of public policy underlying the enactment of section 10–4–418(b)(2) apply equally to insurance policy provisions excluding co-insureds, I respectfully dissent.

I am authorized to say that Justice ERICKSON joins in this dissent.